**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Arthur Berndt, Individually,
as Trustee of the Lloyd Charitable
Lead Trust No. 2 and as Trustee of
the Maverick Lloyd Foundation**</u>

    **v.**

<u>**Gordon Snyder**</u>

Civil No. 13-cv-368-SM
Opinion No. 2014 DNH 256

<u>**O R D E R**</u>

Arthur Berndt brought suit against Gordon Snyder, alleging state law claims arising out of a transaction in which Berndt, in his capacity as Trustee of the Lloyd Charitable Lead Trust No. 2 ("CLAT"), sold the CLAT's shares in AgraQuest, Inc. to Snyder.  Snyder moves to compel Berndt and third parties, Joseph F. McDonald, III, and McDonald & Kanyuk, PLLC, to produce certain documents that they have withheld.  Berndt, McDonald, and McDonald & Kanyuk object.  Snyder, Berndt, McDonald, and McDonald & Kanyuk have also filed a joint assented to motion for in camera review.

<u>**Background**</u>

Arthur Berndt was at all times relevant to this case a trustee of the CLAT and the Maverick Lloyd Foundation

("Foundation").  Pursuant to its terms, the CLAT was obligated
to provide funds on an annual basis to the Foundation so that
the Foundation would have the resources to pursue charitable
purposes (the "annuity obligation").  The CLAT's annuity
obligation to the Foundation was approximately $336,000.

In 2009, in order to meet its annuity obligation to the
Foundation, Berndt, as trustee of the CLAT, sold $500,000 of
AgraQuest stock to Berndt's cousin, Chris Lloyd (the "2009
transaction").  Lloyd paid for the stock with money he had
borrowed from two trusts that Berndt had established for his
daughters in exchange for a promissory note to them, which was
secured by the AgraQuest stock.  Berndt's longtime attorney and
financial advisor, Gordon Snyder, provided legal and financial
advice in connection with the transaction.

In addition to providing legal and financial advice to
Berndt, Snyder acted as the trustee of the daughters' trusts and
served as the escrow agent for the 2009 transaction.  The law
firm of McDonald & Kanyuk, PLLC also provided legal advice to
the CLAT and the daughters' trusts in the transaction.

Several years later, Lloyd defaulted on the promissory note
and transferred the AgraQuest stock to Berndt's daughters'

2

trusts.  McDonald & Kanyuk represented Snyder as trustee of the daughters' trusts and as escrow agent in connection with the default and repossession of the stock.

In 2010, in order to meet its annuity obligation to the Foundation, Berndt sold the CLAT's remaining stock in AgraQuest to Snyder in exchange for two non-recourse promissory notes worth $379,672 (the "2010 transaction").  Berndt subsequently assigned both notes to the Foundation in order to satisfy the CLAT's annuity obligation.  Berndt alleges that around the time of the transaction, he was distracted by his daughter's illness and relied heavily on Snyder's legal and financial advice concerning how to satisfy the CLAT's 2010 annuity obligation.

Unlike the 2009 transaction, the 2010 transaction was not handled by McDonald & Kanyuk.  Instead, Geoffrey Ransom, a former associate of McDonald & Kanyuk who had performed work on the 2009 transaction, provided legal advice for the 2010 transaction.

In August of 2012, more than a year and a half after the transaction between Berndt and Snyder, Bayer CropScience ("Bayer") acquired AgraQuest.  The stock that had been sold to Snyder was transferred to Bayer in exchange for $2,761,515.59.

Snyder used the proceeds of the sale to pay off his obligation on the promissory notes, and he kept the additional proceeds.

Berndt subsequently contacted Joseph F. McDonald, III of McDonald & Kanyuk to assist in working out a way to unwind the 2010 transaction so that the CLAT, and not Snyder, would be entitled to the approximately $2.7 million Snyder had received from the sale of the AgraQuest stock. Berndt and Snyder were unable to resolve their dispute. Berndt initiated this action against Snyder, bringing claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, negligence, misrepresentation, fraudulent inducement, and violation of the New Hampshire Consumer Protection Act, RSA 358-A.

In June of 2014, Snyder subpoenaed McDonald to testify at a deposition and to produce prior to the deposition documents pertaining to the 2009 and 2010 transactions, including documents related to Lloyd's return of the AgraQuest stock to Berndt's daughter's trust in connection with the 2009 transaction. Through Berndt's counsel,[1] McDonald produced responsive documents to Snyder on June 19, 2014. McDonald did

---

[1] McDonald did not have representation at the time he produced the documents.

not raise any objections to the subpoena or produce a privilege log at that time.

On September 4, 2014, Snyder took McDonald's deposition. During the deposition, McDonald testified about several categories of documents that he had provided to Berndt's counsel, but which Snyder believed Berndt's counsel had not produced to Snyder.  McDonald also testified that he jointly represented both Berndt and Snyder in late 2012 in an attempt to resolve the dispute over the 2010 transaction without resorting to litigation.  Berndt's counsel represented McDonald at the deposition for the limited purpose of "preserv[ing] some privilege issues."[2]  Ex. A to Def.'s Mot. (doc. no. 35-2) at 5. After the deposition, Snyder's counsel sent letters to McDonald and to Berndt's counsel seeking production of the materials that McDonald had testified he had provided to Berndt's counsel, but which had not been produced to Snyder during discovery.

On September 22, 2014, McDonald, through his counsel,[3] produced a privilege log listing documents that he provided to

_____

[2] McDonald testified at his deposition that he met with Berndt's counsel, and they offered to represent him the day before his deposition.

[3] McDonald obtained his own counsel after his deposition.

Berndt's counsel for purposes of Snyder's subpoena and which Berndt's counsel had withheld from production.  In the accompanying cover letter, McDonald's counsel indicated that McDonald planned "to correct his deposition testimony to the extent he testified that he represented Mr. Berndt <u>and</u> Mr. Snyder for a short time in 2012."  Ex. G to Def.'s Mot. (doc. no. 35-8) at 1.

On October 6, 2014, McDonald provided an Errata Sheet and Corrections (the "errata sheet"), along with a signed witness certification, from his deposition.  The errata sheet corrected several portions of McDonald's deposition, almost all of which addressed whether McDonald jointly represented Berndt and Snyder in connection with unwinding the 2010 transaction.  Based on McDonald's answers in the errata sheet, McDonald represented Berndt only during that time period.

## Discussion

Snyder's motion seeks to compel McDonald, McDonald & Kanyuk,[4] and Berndt to produce the documents McDonald provided to Berndt's counsel, pertaining to the 2010 transaction, that have

---

[4] Because McDonald and McDonald & Kanyuk have together withheld the documents, the court will refer to both as "McDonald."

been withheld.  Snyder also seeks to compel Berndt to produce documents pertaining to the 2010 transaction which he withheld from his own production in the course of discovery.  McDonald has withheld the disputed documents based on the work product doctrine.  Berndt asserts that the documents sought from him are protected by the attorney-client privilege.

Snyder's motion also seeks to compel McDonald to produce documents McDonald provided to Berndt's counsel pertaining to the 2009 transaction.  While Snyder's motion was pending, Berndt, Snyder, and McDonald submitted a joint motion for in camera review.  In the motion, Berndt, Snyder, and McDonald represented that they had reached an agreement on some of the documents sought in Snyder's motion to compel – for example, all of the documents Snyder sought from McDonald pertaining to the 2009 transaction – but they were unable to reach an agreement as to certain documents pertaining to the 2010 transaction.[5] Therefore, the court will not address Snyder's arguments in his motion to compel pertaining to the 2009 transaction documents.

---

[5] On December 8, 2014, the court held a telephone conference with counsel for Berndt, Snyder, and McDonald concerning the joint motion for in camera review.  Although not explicitly stated in the joint motion, counsel agreed during the telephone conference that they had resolved their dispute over the documents pertaining to the 2009 transaction.

The joint motion for in camera review (doc. no. 56) is granted.  As discussed further below, Snyder does not appear to dispute that, absent an exception or waiver, the documents pertaining to the 2010 transaction that he seeks from McDonald and Berndt were properly withheld under the work product doctrine and the attorney-client privilege, respectively. Therefore, for purposes of Snyder's motion to compel, the court has considered the submitted documents only for the purposes of determining whether the joint client exception or waiver applies.[6]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [which] need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  A party may serve on another party a request "to produce and permit the requesting

---

[6] During the December 8 telephone conference, an issue arose as to whether, by not addressing the issue in the joint motion for in camera review, Snyder had waived his argument that Berndt had waived any claim of privilege over the 2010 transaction documents.  Counsel for Berndt stated during the call that he would discuss the issue with Snyder's counsel and notify the court as to any resolution by the morning of December 9, 2014. The court did not receive any notification.  Because, as discussed further below, Snyder's argument as to waiver fails, the court will address the argument on the merits.

party or its representative to inspect, copy, test, or sample"
certain documents that are within the scope of Federal Rule of
Civil Procedure 26(b) and are in the party's custody and
control.  Fed. R. Civ. P. 34(a)(1).  "A party seeking discovery
may move for an order compelling an answer, designation,
production, or inspection.  The motion may be made if . . . (iv)
a party fails to respond that inspection will be permitted-or
fails to permit inspection-as requested under Rule 34."  Fed. R.
Civ. P. 37(a)(3)(B).

    Before moving to compel, however, a party must give notice
to other parties and "all affected persons," that he intends to
move to compel disclosure of requested documents.  Fed. R. Civ.
P. 37(a)(1).  "The motion must include a certification that the
movant has in good faith conferred or attempted to confer with
the person or party failing to make disclosure or discovery in
an effort to obtain it without court action."  Id.  "The meet
and confer requirement in Rule 37(a)(1) is not an empty
formality" and is not satisfied by demanding compliance without
attempting to resolve or at least narrow the dispute.  A.J. Amer
Agency, Inc. v. Astonish Results, LLC, Civil No. 12-351S, 2013
WL 9663951, at *2 (D.R.I. Feb. 25, 2013).

I.  <u>**Good Faith Effort at Resolution**</u>

In the motion to compel, Snyder stated only that his "counsel sought concurrence from Berndt, McDonald, and McDonald & Kanyuk, but they have declined to produce the documents sought in the Motion to Compel."  Def.'s Mot. (doc. no. 35) at 3. Snyder does not provide any detail about what efforts were made to resolve or narrow the issues.

Berndt states in his objection that Snyder failed to confer in good faith with him and with McDonald before filing the motion.  Berndt explains that after McDonald's deposition on September 5, 2014, McDonald's counsel informed Snyder that McDonald would correct his deposition testimony as provided by Federal Rule of Civil Procedure 30(e).  McDonald and Berndt also offered a compromise solution to the discovery dispute through which they would produce some of the requested documents as long as Snyder agreed that they did not thereby waive attorney-client privilege or work product doctrine.  Snyder failed to respond to the compromise offer and instead filed the motion to compel before McDonald had provided the corrections to his deposition testimony and before the time expired for him to do so.

On November 18, 2014, the court issued an endorsed order

10

directing counsel for the parties and McDonald's counsel to meet and confer and, if they were able to resolve the issue, to notify the court by November 21, 2014.  The court did not receive notification of resolution of the dispute by that date. As discussed above, however, Berndt, Snyder, and McDonald subsequently filed a joint motion for in camera review, in which they stated that they had reached an agreement as to some of the documents sought in Snyder's motion.  Therefore, the court will address the motion on the merits as to the remaining documents in dispute.

## II.  <u>Failure to File Timely Objection to the Subpoena</u>

Snyder argues that Berndt and McDonald waived any objections to providing the documents sought by the subpoena by failing to object or move to quash within the time allowed under Federal Rule of Civil Procedure 45(d).  Berndt and McDonald acknowledge that no objection was made to the subpoena within that time.  They contend, however, that the temporary delay in producing McDonald's privilege log was not the type of flagrant violation that would support the sanction of waiver.

McDonald was not represented by counsel when he received Snyder's subpoena or when he produced the documents responsive

11

to the subpoena.  In response to the subpoena, McDonald
collected documents and sent them to Berndt's counsel.  Berndt's
counsel produced those documents deemed to be discoverable but
omitted the privilege log.  During McDonald's deposition taken
on September 4, Snyder's counsel realized that there were
documents concerning the 2009 and 2010 transactions that had not
been produced.  On September 5, Snyder's counsel wrote to
McDonald and to Berndt's counsel and demanded the withheld
documents.  Further discussions occurred.  McDonald subsequently
provided a privilege log for the documents withheld from the
production made in response to the subpoena.

  Failure to serve timely objections to a subpoena may waive
the right to object.  NML Capital Ltd. V. Republic of Argentina,
No. 2:14-cv-492-RFB-VCF, 2014 WL 3898021, at *7 (D. Nev. Aug.
11, 2014).  When objections are untimely because of justifiable
delay, however, including when a deposition is taken long after
the deadline for producing the documents, the objecting parties
may be heard in opposition to the subpoena.  Woodward v. Victory
Records, Inc., No. 14 CV 1887, 2014 WL 2118799, at *4 (N.D. Ill.
May 21, 2014); Judicial Watch, Inc. v. U.S. Dep't of Commerce,
196 F.R.D. 1, 3 (D.D.C. 2000).

Under the circumstances that occurred here, the delay in
providing the privilege log does not support waiver of the
objections to producing the documents, which are that the
withheld documents are protected by attorney-client privilege
and the work product doctrine.

## III. **Documents Sought from McDonald**[7]

Snyder seeks to compel McDonald to produce the documents
pertaining to the 2010 transaction that he requested in the
subpoena.  Snyder contends McDonald cannot withhold documents
related to the 2010 transaction because (i) the joint client
exception[8] precludes any protection based on the work product

---

[7] As mentioned above, although not spelled out in Snyder's
motion, almost all of the documents Snyder seeks from McDonald
were withheld on the basis of the work product doctrine, and
almost all of the documents Snyder seeks from Berndt were
withheld on the basis of the attorney-client privilege.  The
attorney-client privilege and the work product doctrine protect
different material based on different standards.  Therefore, the
court will address separately the documents Snyder seeks from
McDonald and the documents Snyder seeks from Berndt.

[8] This exception is sometimes referred to as the "common-
interest" exception.  To be consistent with the parties'
filings, the court will refer to the exception as the "joint
client" exception.  See Ken's Foods, Inc. v. Ken's Steak House,
Inc., 213 F.R.D. 89, 93 n.7 (D. Mass. 2002) ("The 'common
interest' doctrine has the same basis as the 'joint defense,'
'joint client' or 'allied lawyer' doctrines.") (internal
citation omitted).

doctrine; and (ii) even if the documents would be protected by the work product doctrine, Berndt waived any protection.  In response, McDonald argues that the joint client exception does not apply and that no waiver occurred.

A.    Joint Client Exception

Almost all of the documents Snyder seeks from McDonald concerning the 2010 transaction were withheld on the basis of the work product doctrine.  See Ex. G to Def.'s Mem. (doc. no. 35-8).  Snyder does not appear to dispute that, absent an exception, the documents McDonald has withheld are protected by the work product doctrine.[9]  Snyder argues that McDonald cannot withhold the documents because McDonald was jointly representing Berndt and Snyder at that time, as McDonald testified at his deposition.

"If [the work product privilege] is established, the burden of proving any exception falls to its proponent."  Vicor Corp. v. Vigiliant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012); see also

---

[9] To the extent Snyder intended to argue that the documents pertaining to the 2010 transaction were not properly withheld absent an exception or waiver, that argument was not sufficiently developed to be addressed.  See Higgins v. New Balance Athletic Shoes, Inc., 194 F.3d 252, 260 (1st Cir. 1999); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412
F.3d 215, 225 (1st Cir. 2005).  Under federal law, the work
product doctrine "has no application in cases where a client
seeks to obtain documents and other tangible things created or
amassed by an attorney during the course of the attorney's
representation of that client."  In re Mich. Boiler & Eng'g Co.,
87 B.R. 465, 469 (Bankr. E.D. Mich. 1988).  Thus, "to the extent
the work product relates to the joint representation, the work
product doctrine would not permit [an attorney] to deny access
to [his] joint client."  In re Cardinal Fastener & Specialty
Co., Inc., No. 11-15719, 2013 WL 425858, at *9 (Bankr. N.D. Ohio
Feb. 14, 2013); see also Bartholomew v. Avalon Cap. Grp., Inc.,
278 F.R.D. 441, 451 (D. Minn. 2011) ("[D]ocuments that were
created [by a lawyer] and arise out of the joint clients' common
interest do not constitute work product within the meaning of
Fed. R. Civ. P. 26(b)(3) because those documents were not
prepared "by or for another party or its representative.").

　　McDonald testified at his deposition that from mid-2012
until early 2013, he was representing both Berndt and Snyder in
an attempt to resolve their dispute regarding the 2010
transaction.  Subsequent to the deposition, after obtaining

counsel, McDonald submitted the errata sheet which corrected his deposition testimony to the extent he suggested that he was representing both Berndt and Snyder at that time.  McDonald states in his errata sheet that he was representing only Berndt in the effort to unwind the 2010 transaction.

Snyder argues that McDonald's attempt to "correct" his deposition testimony through use of the errata sheet should be rejected.  He contends that the testimony was not a mistake or a misnomer about the meaning of the phrase "joint representation" and, therefore, McDonald cannot revise his testimony after the deposition.

Federal Rule of Civil Procedure 30(e) provides:

On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P.  30(e).

"Rule 30(e) expressly allows changes in both 'form and substance.'"  TG Plastics Trading, Co. v. Toray Plastics (Am.), Inc., No. 09-336M, 2013 WL 322121, at *1-*2 (D.R.I. Jan. 28,

2013) (internal citations omitted).  "The Rule merely requires
that the deponent abide by a restricted time frame for making
the changes and recite the reasons for any changes." Elwell v.
Conair, Inc., 145 F. Supp. 2d 79, 86 (D. Me. 2001) (quoting
Great N. Storehouse, Inc. v. Peerless Ins. Co., No. 00-7-B, 2000
WL 1901266, at *2 (D. Me. Dec. 29, 2000)).  Thus, a deponent may
"provide revised answers to deposition questions, including
answers contradictory to those provided at the deposition." Id.
(quoting Peerless, 2000 WL 1901266, at *2); see also Tingley
Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 119-20
(D. Mass. 2001). "[S]o long as the deponent gives reasons for
changes or additions to his deposition testimony under the terms
of Rule 30(e) and the original testimony remains in the
transcript, no action by the court is indicated." Glenwood
Farms, Inc. v. Ivey, 229 F.R.D. 34, 35 (D. Me. 2005); see also
Daroczi v. Vt. Ctr. for the Deaf & Hard of Hearing, Inc., No.
02-440-JM, 2004 WL 180250, at *5 (D.N.H. Jan. 28, 2004) ("[T]he
plain language of the rule only requires that the deponent abide
by a restricted time frame for making the changes and recite the
reasons for any changes.") (internal quotation marks and
citations omitted).

17

Snyder does not dispute the timeliness of McDonald's corrections or contend that McDonald failed to give reasons for his corrections.  He merely argues, without citing any case law, that the court should reject McDonald's errata sheet.  Although McDonald made several changes to his deposition testimony through the errata sheet, "[c]hanges in the substance of a deponent's testimony are contemplated by" Rule 30(e).  Glenwood Farms, 229 F.R.D. at 35; see also Bennett v. Kent Cnty. Mem. Hosp., No. 07-163ML, 2009 WL 101851, at *1-*2 (D.R.I. Jan. 14, 2009).[10]  Snyder offers no persuasive reason to disregard those changes.

Other than McDonald's deposition testimony, which has been corrected by the errata sheet, Snyder offers no support for his contention that McDonald jointly represented Berndt and Snyder in connection with unwinding the 2010 transaction.  In contrast, Berndt included with his objection certain documents suggesting

---

[10] Although not mentioned in Snyder's motion, the court notes that there is a line of cases interpreting Rule 30(e) narrowly to limit permissible changes to a deposition.  The cases arise out of Greenway v. Int'l Paper Co., 144 F.R.D. 322 (W.D. La. 1992).  The narrow approach has been rejected by several district courts in this circuit, and the court does not find Greenway persuasive.  See Daroczi, 2004 WL 180250, at *5 ("The holding in Greenway on the application of Rule 30(e) is not controlling and is not followed by this court.").

that McDonald did not jointly represent Berndt and Snyder in
that endeavor.  These include an invoice for work performed in
connection with unwinding the 2010 transaction in which Berndt
alone is billed for the work, and an email from McDonald's
associate to Berndt attaching a memorandum which outlined facts
pertaining to the 2010 transaction.  The email attaching the
memorandum stated "once I hear back from you, we will be able to
provide you with our advice as to how the situation can be
rectified (if at all)."  Ex. H to Pl.'s Obj. (doc no. 41-8) at
2.

Accordingly, Snyder has not carried his burden to show that
the joint client exception applies to the documents he seeks
from McDonald concerning the 2010 transaction.  Therefore,
McDonald properly withheld those documents based on the work
product doctrine.

B.   Waiver

Snyder argues that even if the documents relating to the
2010 transaction that he seeks from McDonald would be protected
by the work product doctrine and the joint client exception does
not apply, Berndt has waived any privilege or protection as to
those documents.  Snyder points to McDonald's declaration, which

was attached to an earlier filing by Berndt, in which McDonald stated that Snyder had communicated with McDonald and informed him that the proceeds from the 2010 transaction did not belong to him and that Snyder wanted to find a way to transfer the proceeds to Berndt or the CLAT.  See Ex. K to Def.'s Mem. (doc. no. 35-12) at 3-4.  Snyder argues that by including that statement in a court filing, and intending to call McDonald to testify about the statement, Berndt has waived the attorney-client privilege and work product protection.

"A party may waive the attorney-client privilege and/or work product protection by voluntarily disclosing a privileged communication."  Trustees of Bos. Univ. v. Everlight Elec. Co., Ltd., No. 12-cv-11935-PBS, 2014 WL 5786532, at *2 (D. Mass. Sept. 24, 2014) (internal citations omitted).  Snyder contends that Berndt waived any privilege by putting Snyder's statement to McDonald at issue in this case.

Snyder's statement, however, is a non-privileged and unprotected statement.  Snyder does not suggest that Berndt put his own protected communications with McDonald at issue in this case.  See, e.g., Rowe v. Liberty Mut. Grp., Inc., No. 11-cv-366-JL, 2013 WL 3762662, at *6 (D.N.H. July 16, 2013) (party may

20

waive the attorney-client privilege when he "placed protected information in issue for personal benefit through some affirmative act") (internal quotation marks and citation omitted).  Nor does Snyder contend that Berndt placed any documents that were protected by the work product doctrine at issue.  In short, Snyder offers no persuasive argument that Berndt has waived the attorney-client privilege or work product protection with respect to any document concerning unwinding the 2010 transaction.

## IV. **Documents Sought from Berndt**

Snyder seeks from Berndt documents relating to the 2010 transaction that Berndt withheld from his own production. Almost all of the documents Snyder seeks from Berndt were withheld on the basis of attorney-client privilege.  See Ex. I to Def.'s Mem. (doc. no. 35-10).  Snyder does not dispute that attorney-privilege protects the documents he seeks from Berndt. He argues, however, that the joint client exception also applies to Berndt's claims of attorney-client privilege, and that, even if the exception does not apply, Berndt waived the privilege.

### A. Joint Client Exception

Under New Hampshire law, the attorney-client privilege does

21

not apply "[a]s to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."  N.H. R. Evid. 502(d)(5).  In other words, Rule 502(d)(5) excepts communications to a lawyer who was jointly retained by two clients when the communications are offered in a later action between the clients.  See Dumas v. State Farm Mut. Auto. Ins. Co., 111 N.H. 43, 49 (1971); see also Mass. Eye & Ear, 412 F.3d at 225 ("The common-interest exception permits a party access to his joint-client's communications with shared counsel."); Bourne v. Arruda, No. 10-cv-393-LM, 2012 WL 1570831, at *3 (D.N.H. May 3, 2012).

As is discussed above for purposes of the work product doctrine asserted by McDonald, Snyder has not carried his burden to show that McDonald represented both Berndt and Snyder when the communications at issue occurred.

B.   Waiver

Snyder argues that even if the documents he seeks from Berndt relating to the 2010 transaction are privileged and the joint client exception does not apply, Berndt has waived the

22

privilege.  The court has addressed Snyder's arguments concerning waiver of the documents pertaining to the 2010 transaction above.  Snyder offers no persuasive argument that Berndt has waived the attorney-client privilege with respect to any communication concerning unwinding the 2010 transaction.

### Conclusion

For the foregoing reasons, the defendant's motion to compel (doc. no. 35) is denied.  Berndt, Snyder, and McDonald's joint motion for in camera review (doc. no. 56) is granted.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

December 9, 2014

cc:   Arielle Kristan, Esq.
      Nicholas B. Carter, Esq.
      James F. Ogorchock, Esq.
      Ralph F. Holmes, Esq.
      Adam M. Hamel, Esq.
      Cameron G. Schilling, Esq.
      David W. Rayment, Esq.
      Mark S. Derby, Esq.

23